THE STATE, THE MORRIS AND ESSEX RAILROAD COMPANY, PROSECUTORS, v. MILLER, COLLECTOR OF THE TOWNSHIP OF MORRIS.

1. The charter of the Morris and Essex Railroad Company subjects the company to a tax of one and a half per cent. on the cost of the road, as soon as the net proceeds shall equal seven per cent., and provides that no other tax shall be levied upon the company. By the terms of the charter, it may be altered or repealed by the legislature. The subsequent general tax law of 1862 subjected to taxation the real estate of all private corporations, "except those which by virtue of .

State v. Miller.

any irrepealable contract in their charters or other contracts with the state are expressly exempt from taxation," and it repealed all acts, whether special or local, inconsistent with its provisions. *Held,* that the tax law of 1862 repealed the provision of the charter in regard to taxation, and that the assessment made upon the real estate of the company in the township of Morris was rightfully made under the general law.

2. No "irrepealable contract" can result from provisions in a charter which is made, in terms, subject to alteration, amendment, or repeal by the power granting it.

3. Where the right to alter or amend a charter, whenever the public good may require, is reserved, the legislature is the proper tribunal to determine when the right shall be exercised.

On *certiorari.* In matter of taxation upon the real estate of the prosecutors in the township of Morris.

Argued before HAINES and ELMER, Justices.

For the prosecutors, *Theo. Little.*

For defendant, *J. Vanatta.*

The opinion of the court was delivered by

ELMER, J. This *certiorari* is prosecuted by the Morris and Essex Railroad Company to test the legality of the tax assessed, for state, county, and township purposes, upon their real estate in the township of Morris, valued at sixty thousand dollars. The principal office of the company is admitted to be in the city of Newark, and this tax is assessed upon their station and track within the bounds of the township of Morris. The fifteenth section of the charter of this company provides that, " as soon as the net proceeds of said railroad shall amount to seven per cent. upon its cost, the said corporation shall pay to the treasurer of this state a tax of one half of one per centum on the cost of said road, to be paid annually thereafter on the first Monday of January of each year; provided, that no other tax or impost shall be levied or assessed upon the said company." This section has been held to exempt the company from any tax other than that specified, as well before the tax of one half per cent. shall become payable to

the state as afterwards. *The State* v. *Minton*, 3 *Zab.* 529 ; *The State* v. *Bentley, Ib.* 532.

But it ·is insisted that the tax law of 1862, under which this tax was assessed, has altered this provision, and subjected this and the other railroad companies in this state, whose charters are repealable, to the tax thereby imposed, and has exempted them from any tax payable to the treasurer of the state. The first question therefore to be decided is, whether the charter of the Morris and Essex railroad is subject to repeal or alteration by the legislature against the consent of the company.

Section 20th of the original charter, *Acts of* 1835, *p.* 32, declares " that the legislature reserve to themselves the right to alter, amend, or repeal this act, whenever they think proper." A supplement, passed in 1836, declares " that the legislature reserve to themselves the right to alter or amend this supplement, or ·the act to which this is a supplement, whenever the public good may require it." That an act granting corporate privileges to a body of men, and expressly exempting them from taxation, becomes, when accepted, a contract, which is protected by the constitution of the United States from being impaired, is too well established by judicial decisions, by the action of the legislature, and the acquiescence of the people, to be questioned. But the weight of authority is equally decisive, that if the act reserves a right of repeal the company takes the charter, and the contract thereby implied or expressed, subject to such alterations as the legislature may deem expedient. *Angell & Ames Cor., 7th edit.,* § 767, *and cases in notes;* 3 *Kent's Com.,* 10*th edit.,* 306. No " irrepealable contract " can result from provisions in a charter which· are made in terms subject to be altered, amended, or repealed at the pleasure of the power granting them, any more than a contract in ·any other manner entered into, which contains an express provision that it shall be subject to be abrogated or altered at the pleasure of one of the parties, can be considered as an " irrepealable contract." In the cases of *E. and N. E. Railroad Co.* v. *Casey.* 26 *Penn.*

301, and *Miners Bank* v. *U. S.*, 1 *Green's Iowa Rep.* 553, it was held, that where the right to resume the privileges granted was reserved only in cases of their abuse or misuse, the legislature were the sole judges of such abuse or misuse, and could repeal without a judicial investigation. The charter in question reserves the right to alter or amend whenever the public good may require; and that the legislature is the proper tribunal to determine what the public good requires in all matters of legislation, is too plain to be questioned. Does, then, the tax law of 1862 alter or amend the provisions in the charter of the prosecutors, exempting them from such a tax as has been assessed on them? This depends upon the determination of the question, whether the provisions of that law are plainly inconsistent with that exemption. It is well settled, that mere general words of repeal will not affect the provisions of private or municipal corporations. But this law enacts, in very specific and precise terms, that "all other acts and parts of acts, whether special or local or otherwise, inconsistent with the provisions of this act, are hereby repealed."

In the case of *Mechanics and Traders Bank* v. *Bridges and Boyle*, decided at June term, 1862, of this court, (*ante p.* 112,) it was held, that by virtue of this clause, all the provisions of the charter of Jersey City respecting taxation, inconsistent with it, were thereby altered and made to conform to the general tax law of the state. And, in my opinion, this clause shows a clear intention of the legislature to alter the mode of taxation before prescribed in all other special acts they had the power to interfere with. Section 7th of this law (*Acts of* 1862, *p.* 348,) enacts, "that all real and personal estate within this state, whether owned by individuals or corporations, shall be liable to taxation in the manner, and subject to the exemptions herein after specified." Section 8th enacts, "that all private corporations of this state, except those which by virtue of any irrepealable contract in their charters, or other contracts with this state, are expressly exempt from taxation, shall be and hereby are required to be re-

spectively assessed and taxed." Section 13th enacts, "that the real estate of private corporatións situate within this state shall be assessed to said corporation in the township or ward in which it is located, in the same manner as the real estate of individuals; and the amount of such assessment shall be deducted from the amount of the capital stock and surplus and funded debt, or of the valuable assets of the said corporation."

As these provisions are plainly inconsistent with that part of the act incorporating the Morris and Essex Railroad Company which requires them, in a certain contingency, to pay a tax to the treasurer of the state, and exempts them from all other taxes, and as the contract in this charter is not an irrepealable contract, but is subject to be abrogated or changed by the legislature, it only remains to inquire whether there is any other contract with the state expressly exempting them. No such contract outside of the charter is alleged. But it is insisted, for the company, that the words, "other contracts with this state," mean any other contracts than irrepealable contracts in their charters, and therefore include repealable contracts in their charters. I am not able, however, to adopt this construction, because it makes the two clauses of the exception in effect contradictory, and rejects the word irrepealable as wholly superfluous and unnecessary. If the legislature meant to except from the operation of this law all corporations which are in terms expressly exempted from taxation, this meaning could have been, and doubtless would have been plainly expressed in unambiguous terms. If the word irrepealable had been omitted, and the language had been, "by virtue of any contract in their charters, or other contracts with this state," there could be no doubt of the meaning. But the word irrepealable has been used evidently for a purpose, and in my opinion the result is, that the exception does not apply, unless there is a contract in an irrepealable charter, or by some provision other than that contained in the charter itself. The object of the exception evidently was to avoid even the appearance of at-

tempting to pass a law in contravention of that provision of the constitution of the United States, which prohibits the legislature of a state from impairing their contracts, and this object is fully obtained by the construction above adopted.

It was urged that the reserved right to alter or amend was not meant, and cannot fairly be interpreted to reserve the right to alter the prescribed mode of taxation in a charter which not only contains an express exemption from any other mode, but which gives to the state a prospective right to become the owner of the road and all its appendages, upon the payment of its appraised value. The answer however is, that the language of the reservation is general, and extends to all the provisions of the charter; and that the stockholders accepted and became parties to a contract, one of the express terms of which is, that the legislature may alter or rescind it whenever, in their opinion, the public good should so require. If hereafter some mode of travel should be discovered, so much superior to the railroad as to make it for the public good that the dangers incurred by the road should be wholly avoided, the charter may be repealed, and the stock rendered valueless. So if the legislature have come to the conclusion that the public good requires them to tax the road as other property in the state is taxed, they have wisely reserved the right to do so; and the company, having accepted the privileges granted to them subject to this right, cannot complain if it is exercised. If the legislature have erred in judgment, and have dealt hardly with this or with other railroads in like circumstances, as to which we have neither the means nor the right to form an opinion, the remedy is not to be sought from the judiciary, but from those whose duty it is to determine what, in this matter, is really for the public good. Some stress was laid by counsel on the inconvenience it was alleged will result from subjecting railroads, which often have real estate extending over large sections of the state, to be taxed in each particular township through which they may run, and from thus requiring all these assessments to be ascertained, and the ag-

gregate amount deducted from the capital stock, at the place where the principal office is situate. But this agument is not entitled to much weight. All the inconveniences on both sides of this question were probably duly considered by the framers of the law; and it is quite possible that, in these times of heavy taxation, the inconvenience of depriving many townships of the right to tax valuable real estate within their limits, may have been considered as outweighing the mere ·difficulty of adjusting the assessment upon the capital stock and accumulated surplus of the company. In my opinion, this tax was rightly imposed, and the assessment must be affirmed.

Assessment affirmed.

CITED in *State, Taintor, pros.,* v. *Morristown,* 4 *Vroom* 61; *State* v. *Douglas, Receiver,* 5 *Vroom* 86; *S. C.,* 5 *Vroom* 488; *McGavisk, Collector,* v. *State M. & E. R. R. Co., pros.,* 5 *Vroom* 511; *State, M. & E. R. R. Co., pros.,* v. *Com'r of Railroad Taxation,* 8 *Vroom* 235; *S. C.,* 9 *Vroom* 474.